JOHN G. JONES *v.* MARY A. HAMMETT et al.

**Deed to Land — Escrow — Delivery to One Grantee.**

A deed cannot be delivered to the grantee as an escrow, as upon the delivery of a deed to a grantee upon condition, he takes it discharged of the condition and a delivery of a deed to one of two grantees is delivery to both.[1]

Bill in chancery by appellant against appellee to enjoin the sale of certain lands, described in the bill, under an execution issued under a judgment in favor of appellee. From a decree dismissing

---

[1]

Where there is no delivery of an instrument purporting to be a deed, it is fatally defective as such, and ineffectual for any lawful purpose. Walker *v.* Pigott, 1 Miss. Dec. 190, and cases cited in note.

To constitute an escrow, the instrument must be delivered to a stranger to it (and not to one of the parties), to be held by him until certain conditions be performed, and then to be delivered to the party to whom it is made, and to take effect as the deed or bond of the grantor or obligor. Graves *v.* Tucker, 10 S. & M. 9.

An instrument signed, sealed, and acknowledged, and placed with a third person to be delivered upon the happening of some events, is an escrow, and does not take effect as a deed until delivery to the grantee. If he obtain possession of it before such event, it is not valid. Harkreader *v.* Clayton, 56 Miss. 383.

While an escrow does not take effect so as to pass title until its final delivery, this delivery derives all of its force from the first delivery. If equity requires it, the second delivery will be made to relate back to the first, so as to protect the grantee against intervening claims. Whitfield *v.* Harris, 48 Miss. 710; Simpson *v.* McGlathery, 52 Miss. 723; Harkreader *v.* Clayton, 56 Miss. 383.

Where land is sold on credit and the vendee takes possession, the vendor making a deed which is delivered to a third party as an escrow, to be held until payment of the purchase money, which is paid, but after this and before final delivery to the vendee, judgment is obtained against the vendor and enrolled, the rights of the vendee are superior to those of the judgment creditor. Whitfield *v.* Harris, 48 Miss. 710.

A deed delivered to the grantee is not an escrow, and any verbal agreement qualifying the effect of such delivery is void. McAllister *v.* Mitchner, 68 Miss. 672; 9 So. 829.

A deed delivered by an agent, after the grantor's death, in pursuance of directions previously given by the latter, conveys no title. Weisinger *v.* Cocke, 67 Miss. 511; 7 So. 495.

his bill complainant appeals. The opinion of the court contains a statement of the facts.

APPEALED from the Chancery Court, Jefferson county, H. S. VANEATON, Chancellor.

Affirmed, February 28, 1881.

*Attorneys for appellant, E. R. Jones, and Frank Johnston.*

*Attorneys for appellees, Nugent & McWillie.*

Brief of E. R. Jones:
\* \* \* The proof shows that the deed from John G. Jones to F. A. & E. R. Jones was never *delivered,* but held as an *escrow.* And that there was a large balance of the purchase money due and unpaid. What amounts to a delivery of a deed so as to bind the vendor? See: 30 Miss. 96, 100, 691; 31 Miss. 17, 41, 47; 34 Miss. 741; 37 Miss. 501; 48 Miss. 710, 343.

Where a party cannot make out his title but by a deed which leads him to another fact, he shall be pronounced to have full notice of that fact. 31 Miss. 324.

If appellees have any interest through E. R. Jones to the Belle Grove plantation, it is merely an interest in the surplus after payment to J. G. Jones of the balance of the purchase money.

The evidence shows that the sale of Belle Grove by John G. Jones to his sons, F. A. and E. R. Jones, was only conditional on their completing the payment of the purchase money, which was never done, and hence the contract of sale was ended by mutual contract. What the law does compulsorily, and parties may do voluntarily. 36 Miss. 510, 516; 54 Miss. 200.

Only creditors existing at the date of a deed can attack it for fraud. 31 Miss. 658; 34 Miss. 708; 42 Miss. 749; 46 Miss. 346; 49 Miss. 518; 50 Miss. 381; 54 Miss. 74.

Proof shows that on the 1st of January, 1869, the date of the deed from J. G. Jones to his sons, E. R. Jones was in prosperous condition and had no creditors. Mrs. Hammett leased him her plantation on credit on the 10th of January, 1869, for two years. The appellees were not even creditors at the date of the deed and it ill becomes them to say "said deed was suppressed from the record by E. R. Jones to defraud them." This, like many other

of the allegations of their cross bill, is wholly unsupported by proof. *"Falsus in uno, falsus in omnibus."*

Subsequent creditors must show that a deed complained of by them as fraudulent, was made with the intent to defraud them. 46 Miss. 309; 32 Miss. 749; 54 Miss. 74, 728, 733.

The proof in the case shows fully why the deed was never recorded and the sale of Belle Grove consummated. The appellee, nor any one else, were ever in the slightest degree injured by the witholding of said deed; and the possession of Belle Grove by E. R. Jones (which is not proven) was only notice of his title as tenant or lessee or agent of John G. Jones, and was not sufficient to justify the inference that he had purchased the land and held the fee. 27 Miss. 845; 51 Miss. 146, 560; 1 S. & M. 70.

Brief of Frank Johnston:

The effort made by the levy of the execution in favor of Mrs. Hammett was to subject the lands of John G. Jones to a debt due to her from Ely R. Jones. And this singular result is designed to be accomplished by two theories, viz: that the sale from John G. Jones to Ely R. and Frank Jones was not cancelled; and that John G. Jones is estopped from denying the ownership of Ely R. Jones.

This whole proposition is untenable on the facts of the case. Moreover, if the sale has never been cancelled (as the original sale is not pretended to have been other than *bona fide*), it is clear that Ely R. Jones owns the land charged with a vendor's lien for the price due to John G. Jones; and yet the decree absolutely destroys or displaces this lien and gives Mrs. Hammett prior satisfaction out of the land.

Laying aside the estoppel theory, it is manifest that this result must be erroneous. Thus, if the sale was cancelled or rescinded by the parties, then the property is not subject in any way to the debts of Ely R. Jones. And if the sale has not been rescinded, then Ely R. Jones is the owner, and holds subject to the lien in favor of John G. Jones, for the unpaid purchase money, and his creditor could only take this interest on execution. In either view, or in either event, John G. Jones should be fully protected.

But the decree in this case has not only denied him all title and ownership in the property, but has denied and defeated his right to be paid his purchase money, for the purpose of subject-

ing the land to Mrs. Hammett's judgment against Ely R. Jones. The dismissal of the bill on final hearing has this effect.

We will examine the case on the law applicable to the facts, to see if such a remarkable conclusion can be maintained. I will first present the real facts in relation to the title and ownership of the property, and this without reference to the estoppel idea. There is no doubt that in 1869 John G. Jones (who was then the owner), *sold this property* to Ely R. and Frank Jones for $6,453.34, of which only $2,220.05 was paid in cash, and a few small payments afterwards made. There is nothing to indicate that this sale was not in good faith, even if this could possibly be a question of any importance in the case.

In November, 1872, Frank Jones conveyed, by quit claim, his interest in the land to Ely R. Jones, the latter assuming the payment of all the unpaid purchase money; and in January, 1873, John G. Jones assented to this, releasing Frank from personal liability for the purchase money and accepting Ely R. Jones as the sole debtor. Of course, this left the land, as to the question of *title* between the grantor and Ely R. Jones, precisely as it stood originally between the grantor and the two grantees, Frank and Ely R. Jones. In October, 1876, Ely R. Jones, being unable to pay for the land, by mutual consent between himself and John G. Jones, *the trade was rescinded,* the deed was delivered up and cancelled, Ely R. Jones released from the purchase money debt, and the ownership restored to the grantor, John G. Jones.

I will consider or discuss the case at this point as if the original deed *had been absolutely delivered,* and as if there had been no escrow, or conditional delivery of the deed. Undoubtedly, if the land had been conveyed by a deed delivered to the grantees, and the parties (all concerned) had actually cancelled the whole trade by agreement, the deed (unrecorded) being cancelled, and the land being restored in fact to the grantor, and the grantees being released from the payment of the purchase money, because of their inability to pay—in a word, the land having been surrendered for the debt, in this state of case how could the property be taken in execution for the debts of the grantees? The creditors of the latter would occupy no better attitude than their debtor. And would the grantee, under such circumstances, be permitted to claim the land and set himself up as owner, withholding the purchase money? As he claimed a release from the purchase money, he

would be bound to surrender the land, for he *could not keep both the money and the land.*

But counsel contents himself by asserting that the *legal title, eo nominee,* remained in Ely R. Jones. Admitting this, for the sake of argument, it is very clear that the *bare legal title* alone remained in him, and he held it in trust for his original vendor, either charged with the equity of reconveying this legal title to his vendor, or charged with the payment of the purchase money.

But, as the grantee claimed the release from the purchase money obligation, it was not only his duty to convey, but he could have been forced in equity to have reconveyed the legal title to his vendor. * * *

But the case is even stronger, in view of the fact that the deed from John G. Jones to Ely R. and Frank Jones was never delivered, or intended to be delivered, to the grantees, to take effect as an absolute conveyance. The evidence shows that the deed was placed in the custody of Ely R. Jones (one of the grantees), with other papers belonging to John G. Jones, for safe keeping, with the distinct agreement and condition that it was *not* to take effect as a deed until the payment of the purchase money. What principle of law presents such an arrangement? What rule will intercept the clear agreement of the parties, and make that absolute which is intended to be conditional?

The simple fact that a party to a deed gets possession of it, does not operate conclusively a legal delivery; or, in other words, invest him with the ownership and title to the property. And yet the proposition of counsel leads to such a conclusion.

Suppose the grantee had procured a delivery by untrue representations or by fraud, it would not be pretended he took any title. How is it different where he receives it on an express condition which is part of the contract of purchase?

Technically, it may not be an escrow, but it is certainly *not a delivery as a deed.* The delivery consists of both a fact and an intention. And the latter ingredient is as essential as the former.

Mr. Nugent evidently recognizes that there could have been a conditional delivery, or an absence of a delivery (aside from the technical escrow), for he says, after stating that an escrow *(eo nominee)* must be to a stranger, "The delivery was not conditional, the acknowledgment shows it to have been unqualified."

This is no answer. An escrow would be acknowledged—and

thus ready for delivery and registry. But the acknowledgment would not be conclusive on the point, as to a delivery. I don't know that it would have any force at all as evidence.

A deed in the possession of a grantee, unacknowledged, would afford *prima facie* evidence of a delivery. If acknowledged, I do not see how the acknowledgment would make this *prima facie* presumption any stronger. And if an acknowledged deed was found in the possession of the grantor, no presumption of delivery would arise. The function of the acknowledgement being solely to entitle the deed to registration, it has no reference at all to the subject of delivery.

Again, to avoid the conditional delivery, or the alleged non-delivery, Mr. Nugent argues that the whole sale was a scheme devised to defraud Mrs. Hammett. The sale, with all its conditions as to the delivery of the deed, was made in 1869—not only before Mrs. Hammett obtained her judgment, but before all of her debt came into existence. * * *

If the debt due for the purchase was *bona fide,* and had never been forgiven, the appellee has no case. She is simply trying to get rid of either the ownership of John G. Jones or his paramount equity to payment for the land. To accomplish anything of practical value, she must not only prove the ownership in Ely R. Jones, but must defeat in some way John G. Jones' superior lien for the unpaid purchase money, if he is *not the owner.* Even admitting that the deed was absolutely delivered to the grantees, neither of these results follow. Even then, Ely R. Jones would hold the naked legal title in trust, to be called for by John G. Jones, or in trust for the payment of the purchase money. I do not see how it is possible for John G. Jones to lose both his money and his land. Or how Mrs. Hammett can squeeze her execution into the very thin opening of a naked legal title in her debtor.

On the true facts of the case, Mrs. Hammett in no view had any right against the land. * * *

Brief of Nugent & McWillie:

It will be seen that the exact date when the trade was cancelled and annulled and the deed returned is fixed at the 24th of October, 1876, months after the note given for the purchase money was barred by limitation, by this sworn bill. The only allegation in the bill to save this bar, if that will do so, is, that it was ex-

pressly agreed between all parties thereto, the complainant and his sons, that the said deed was not to be delivered or recorded until all the purchase money was paid, and that the said *E. R. Jones was made the custodian of the deed;* and that, in accordance with his agreement, the deed was never filed for record. John G. Jones swears that the understanding was, the deed was not to be put upon the record until the purchase money was paid, and in case they should be unable to pay for it the trade was to be void and the deed cancelled; that, by mutual consent, Ely R. Jones, one of the grantees, was the custodian of the deed for the benefit of the parties. If the money was paid the deed was to be delivered by Ely for the benefit of himself and brother, and if not paid it was to be returned for cancellation. He further testifies that the trade or sale *was cancelled some time in the year 1872*—thinks in the summer—a short time before Mrs. Hammett recovered her judgment. In the bill he swears that this was done on the 24th of October, 1876; but the witness wanted here to get ahead of the judgment against his son.

E. R. Jones says that when the deed was made all the parties agreed that he was to keep the deed, and when he and his brother paid the purchase money the deed was to be recorded; if they failed the deed was to be returned to the grantor, his father, and the sale cancelled. He says he soon found out, after he purchased from his brother Frank, he could never pay for the place, and so informed appellant, who left with him all the titles, maps, etc., for use in selling the place. *Since January, 1873,* he has managed the place as agent for his father, and since the fall of 1876 he has had the counsel of his brother, J. A. B. Jones. He had almost unlimited credit up to the fall of 1872 and was in easy circumstances.

J. A. B. Jones says that the deed was executed by the appellant to Frank A. and Ely R. Jones, and by a "family agreement" the deed was not to be recorded until the purchase money was paid, *for the protection of the heirs,* and, in case the purchase money was not paid in a reasonable time, the deed was to be cancelled. Ely was the custodian of the deed by agreement of all the parties, and, being unable to pay, *the deed was cancelled.* Ely continued to manage the place as agent of his father.

A moment's attention will demonstrate that the witnesses are either mistaken in their view, or that the transaction was, legally, fraudulent. It is said by two of them that the agreement was

that Ely should hold and not record the deed, and, if he never paid the purchase money, the deed was to be cancelled and the trade avoided. It is said by the last that there was a family arrangement *for the protection of the heirs,* in virtue of which the deed was not to be recorded, and, if the purchase money was not paid in a reasonable time, the deed was to be cancelled. Ely, by this "family arrangement," was to possess and manage the farm, with a deed in his pocket, and owing his father for the purchase as a debtor; make crops and contract debts; pay as he could until he paid to within a thousand dollars of the debt due his father, or less; and then, if he was pushed or judgments were rendered against him, he could return the deed; the "heirs" could be protected, and Ely could go on as an agent. The idea was a happy conception, and, but for the fact that it was quixotic in the extreme, would provoke a serious rebuke.

Ely Jones was one of the *grantees in the deed,* and the deed was actually delivered to him. There could be no such thing as an *escrow* in the case. Graves *v.* Tucker, 10 S. & M. 23.

The delivery was not conditional; the acknowledgment shows it to have been unqualified. The real purpose of the parties was to save costs and keep the sons from suffering because of the debts to be contracted and "protect the heirs." There was nothing conditional in the sale; the cash was paid; the note was given, and the deed was executed and delivered. Subsequent payments were made on the note. As late as November, 1872, Frank Jones supposed he held half the property, charged with the balance due his father, and conveyed that half interest to Ely Jones, with the consent of the appellant. Before this, Mrs. Hammett had recovered judgment. It is too obvious for further discussion that there was an actual delivery of the deed, followed by possession of the property, and that the full legal title became vested in Frank Jones and Ely Jones. If this be admitted, the destruction of the deed itself would not have divested the title. Lisloff *v.* Hart *et al.,* 25 Miss. 250.

Nor could this be done by returning the deed to John G. Jones. Burton *v.* Wells, 30 Miss. 692. * * *

OPINION.—COOPER, J.:

The appellant filed his bill in the Chancery Court of Jefferson county on the —— day of ———— to enjoin the sale of certain

lands levied on under an execution issued under a judgment in favor of Mary A. Hammett against one Ely R. Jones. The allegations of the bill are substantially as follows: That in the year 1869 the complainant was the owner of the land levied on, and on the — day of ———— sold the same to his sons, Frank A. and Ely R. Jones, who paid in cash the sum of $2,220.05, and for the balance of the purchase money—viz: $4,233.29—executed their note, due January 1, 1870; that a deed was written, signed and acknowledged by himself and wife, conveying the land to the purchasers, but it was agreed that the deed was not to be delivered or enrolled until all the purchase money should be paid, but that the deed was to be placed in possession of Ely R. Jones, to be held by him as a mere custodian until the purchase money was paid, when it was to be delivered to the grantees, and, if the purchasers should be unable to make the payment, the conveyance was to be returned to him and the sale cancelled; that some years afterwards, Frank A. Jones, by consent of all parties, conveyed his interest in the lands to Ely R. Jones, who assumed payment of the whole unpaid purchase money, and Frank A. Jones was released by complainant from all liability therefor; that in 1873, Ely R. Jones, finding that he would be unable to make payment of the balance of the purchase money due, agreed to hold the place as agent for complainant, and since said time has so held it, and in October, 1876, returned to him the deed, at which time complainant released Ely R. Jones from all liability on account of the purchase money then due, which exceeded in amount the value of the land; that Mrs. Hammett had recovered a judgment against Ely R. Jones in November, 1872, in the Circuit Court of Jefferson county, under which execution had been issued and levied on the lands. The prayer is for an injunction and general relief. The defendants answered at considerable length, denying that the delivery of the deed from complainant to Frank A. and Ely R. Jones was conditional. They charge that the conveyance was an absolute one, and that that deed was not recorded because the grantees were financially embarrassed, and to record the deed would be to invite attack from their creditors. On final hearing the chancellor dismissed the bill, and complainant appealed.

It is unnecessary to examine the testimony in the cause, which is quite voluminous and conflicting. Complainant, by his bill,

shows a valid and complete chain of the legal title of the land to
Frank A. and Ely R. Jones.   The attempt to limit the operations
of the deed by depositing it with one of the grantees, to be by him
held for the grantor until payment of the purchase money, how-
ever honestly made, is vain.   A deed cannot be delivered as an
*escrow* to the grantee, "because thus a bare averment without
writing would make void a deed."   Whydon's Case, 2 Cro. 520;
Williams *v.* Gwin, 2 Cro. 884.

Upon delivery of a deed to a grantee upon condition, he takes
it discharged of the condition.   3 Wash. on Real Prop. 268, and
authorities there cited.

A delivery of a deed to one of the grantees is a delivery to
both.   5 Crouch, 531.

The title, having vested in Ely R. Jones, was not divested by
a return of the conveyance to complainant.   It could only be re-
conveyed by writing.

*Decree affirmed.*